I'd like for the attorneys for each side to step up to the podium. I want you to state your name, tell the court who you represent, and approximately how much time your argument will take. Good morning, counsel. Good morning, Your Honors. My name is Perianne Stein on behalf of Willie Washington. I'd like to take 12 minutes for the opening and reserve three for rebuttal. Very good, Mrs. Stein. Good morning. Good morning, counsel. Good morning. My name is Lysanne Fablice, assistant state attorney at Perianne on behalf of the people of the state of Illinois. Very good. How much time will you argue? Approximately 15 minutes. Very good. Mrs. Stein, you can proceed with your argument. May it please the court. When a defendant is charged with a sex offense, the state is allowed to testify to hundreds of other acts. In fact, there was such a high volume of other acts that it led to a mini-trial on the other crimes. In the Cardamom case, the appellate court found that the trial court erred in allowing in an excessive amount of other crimes evidence, and the court specifically focused on the extreme number of acts. In the Instant case, we also have an extreme number of acts. Cardamom counted that the primary complainants whose testimony led to convictions testified to between 158 and 257 uncharged acts. In the Instant case, the primary complainant testified that Washington committed these acts against her two to three times per week over the course of five years. That's between 520 and 780 uncharged acts just from the primary complainant. Her two sisters reiterated her testimony that Washington was committing acts against them over a similar period of time. So that number, that 500 to 700 number, would be doubled or tripled with all three sisters' testimony. But there were, I don't remember the number of counts in the indictment, but there were an incredible variety of sexual abuse acts committed. And so for purposes of showing propensity in similar acts, wasn't it necessary for the state to elicit from the other victims the same types of conduct from the defendant? It was proper to allow in some evidence, but Cardamom discussed where to draw the line, how much other crimes evidence could be admissible. And Cardamom held that along with the primary complainants, a few instances of uncharged conduct would be proper. And with this 500 to 700 number, we are well beyond just a few instances of uncharged conduct. The primary complainant's testimony spanned 42 pages, but the two sisters' testimony spanned 47 pages. To get? To combine. That's correct. That's correct. What you just told us is horrendous. And if anything, even if you're correct, it's a harmless error. I mean, we have a horrendous situation here, and having you just said, well, how is this not harmless error? Because this case is similar to Cardamom, it isn't harmless. It's such an extreme number of acts, an extreme amount of propensity evidence, that based on the evidence I don't understand that. I mean, just because it's a large number of years, why shouldn't that be truthful? You're not saying it's not truthful. You're not saying it's not accurate. We're not challenging that that statement by the primary complainant is inaccurate. And we're not challenging that the primary complainant herself couldn't testify to some of the with regard to the sister. That's correct. That's correct, Your Honor. So he opened the door, which he knew he was doing. He was told that if you On the second issue, yes, where the trial court allowed in his prior conviction, in that case, correct, that he did open the door. However, there was no, because the exact same testimony was an issue in the prior case as well as in the instant case, there was no way for him to defend himself or deny the allegations without opening the door in that manner, which the trial judges seem to be unaware of. So it's an abuse of discretion standard, and you have the victim who's entitled to testify that over the course of five years, two or three times a week, my step-grandfather assaulted me in dozens of ways. And propensity evidence is admissible in these types of cases. So was it that the other victim's testimony should have been ten pages? They should have said, well, my step-grandfather assaulted me in similar ways but not be able to say for how long. I don't, I'm trying to determine on what basis we could find this was an abuse of discretion. Well, the case law has not yet set a standard of how much testimony is allowed in. Again, Cardamone noted that a few instances of uncharged conduct could be proper. So in a way to curtail their testimony but still allow some of it in would be to have one of the other sisters testify as opposed to both, or if you were going to have both testify, curtail it in a manner where the witness says that Washington committed an act against her at the first house, Washington committed an act against her at the second house, and cut it off there. The Perez case, which also discusses and distinguishes Cardamone, noted that in that case it was acceptable to allow any other crimes evidence, in part because the other witness only answered approximately 15 to 20 questions about the conduct and the acts. So in this case we could have limited, not necessarily in every case a certain amount of pages of testimony, but because we do have such an extreme amount of testimony and such an extreme number of acts, again, similar to what was at issue in Cardamone, that it should be limited to some extent. If in Condon you had seven victims, here we're talking about two sisters plus the victim here in this case, that's three. I mean, that's a big difference. That's true, but Cardamone does talk about the possibility of juror confusion in all kinds of cases. So in this case we have three sisters, they're all testifying to similar acts, they're all similar ages, they have similar names, so it is possible that there was some juror confusion. The jury could have used... No, you're just guessing. I mean, there's nothing in the record to show any kind of jury confusion, is there? There isn't anything in the record specifically to show jury confusion, but there wasn't necessarily in Cardamone either. There wasn't anything to point out that the jurors would have been confused, but it was something that Cardamone looked at and thought was important, that you could have the jurors use one complainant's credible testimony to bolster, about an uncharged event, to bolster evidence and testimony that was weaker about an actual charged incident. And the prejudice was exacerbated, again, when the trial court allowed in this prior conviction for predatory criminal sexual assault, which leads up to the second issue. In determining whether a prior conviction should be admitted under Montgomery, the judge has to weigh the potential prejudice against the probative value. And the state argues that because the parties referenced Montgomery in their motions, that the trial judge was necessarily aware of Montgomery and considered all the relevant factors. And that general proposition may be applicable in some cases, but it doesn't apply here because the court didn't recognize the unique and specific prejudice of allowing this prior conviction in. The jury could have come to one of several different conclusions based on the admission of this prior. First, they could have thought that Washington committed a crime and was convicted against the same primary complainant, or that he was convicted of a crime against one of the other two sisters based on the same testimony. And these conclusions are both prejudicial because the sister's testimony overlaps and reiterated Washington's same behavior. So if another jury has already found that he was guilty of the same behavior and the same testimony, the instant jury would be more inclined to find him guilty as well. Isn't that always going to be true in propensity? I'm sorry? Isn't it always going to be true when you have propensity evidence? That kind of overlay? That is true, although the prior conviction. That's part of what propensity means, is there's a lot of similarities. That's true, the prior conviction wasn't allowed in for propensity. It was allowed in to impeach Washington's credibility. So in that sense, they weren't supposed to use it for propensity. Since it was limited for that purpose, isn't it proper in this case to impeach his testimony? Even though the jury was properly instructed, we know in this case that the jury considered it for more than credibility, to assess Washington's credibility, because the jurors sent a note specifically asking for the evidence of the prior conviction. So they were interested in using it for propensity evidence. We also have the issue where the juries could have considered that Washington committed this prior offense against a fourth unrelated child. And that's, again, going to further exacerbate the propensity evidence. Neither of these errors were harmless here because of the extreme number of acts that were admitted. And because of the combined prejudice from these two errors, Washington requested that this Court reverse his conviction and remand for a new trial. Can I ask you a question before you sit down, Ms. Stein? And it's something that comes up in these cases. Unlike juvenile matters, these cases aren't filed under seal, but we have minor victims here. And in looking at the parties' briefs, and I'm kind of directing this to both sides, there is identifying information in there where if someone wanted to,  you know, identify a minor or a minor, they would be able to use the children's first names. Shouldn't the parties be sensitive to that in terms of what they file in this Court to identify minors? Yes, Your Honor. And I apologize for using the children's first names in the briefs. Usually initials are used, but because all three sisters had the same initials, in order for clarity, we decided to use the sisters' first names. But in the future, certainly, there would be ways to curtail that by referring them, for example, for Sister 1, Sister 2, Sister 3, something along those lines. And my question is really directed to both sides. Thank you. Counsel, state your name again for the record before you proceed. Mason City Court. Good morning. Again, Lisanne Pugliese, Assistant State's Attorney, appearing on behalf of the State of Illinois. Defendant agrees that some of this evidence should have come in, that there were sufficient similarities, there was sufficient proximity between the offenses to show relevance. What defendant complains of is the amount and extent of the testimony that it amounted to a mini-trial. But interestingly enough, in the reply brief, defendant argued that these same similarities were so extensive that they caused undue prejudice. So if to, you know, buy into that logic, it would turn the statute and Illinois Supreme Court case of People v. Donahoe on its head, where Donahoe specifically says the increase in similarities increases the relevance and increases the probative value. The increase in similarity renders the decision to admit the evidence not in abuse of discretion. But the similarities are not necessarily the details that a jury needs to hear. In other words, the jury doesn't need to hear all of these similarities in order to use this evidence for propensity. I think we need to, as Donahoe stated, there's no bright-line rules here. We need to look at every case on a case-by-case basis. And if we look at the trial that we have here, where there was a young victim at the age of five, when this abuse began and continued for several years, we had a familiar offender, a step-grandfather, who pressured her into secrecy for years and also had the access to her to assault her when she was alone, when her brothers and sisters were outside playing at the park. So there were no additional eyewitnesses in a case such as this, and the legislature allows this evidence for that very purpose to show propensity and to corroborate some of these victims where there are no additional evidence. And the extent of the girl's testimony is nowhere near the outlier case of people, which this cardamom defendant relies on. Under over 257 acts, seven witnesses, and almost 100 witnesses in the entire trial, we had one victim per act testify and defendants admission. And that's it. We did not parade in additional outcry witnesses, any medical exams that occurred. We had one witness and one admission per act. That's two acts. And the extent of their testimony and the fact that they needed to set up the context of this abuse, because it continued for years over two homes, and the defendant would like the state to just gloss over the predatory acts that occurred to these girls. But there were four counts alleged, as Justice Mason indicated. We had to prove beyond a reasonable doubt that four separate acts occurred, the same acts that occurred to the sisters. And it was imperative that that evidence came out to show the defendant's propensity to commit those type of sexual acts against the victim in this case. And important to note also that the witnesses, the sisters, did not testify to any acts that were more heinous than already came out most of the victim's testimony. So for those reasons, the extent was proper. The court conducted a meaningful analysis in determining the probative value outweighed any prejudice, and the court recognized the concerns in the mini-trial. And as in the written ruling, she noted, had the state asked for two additional victims to testify, like they had in a previous case against one of the sisters, she would have denied it. It would not have paraded in several other witnesses who also suffered abuse from this defendant. She would have limited it to these two. So she was fully aware of the danger of a mini-trial, noted that in her written ruling, and properly exercised her discretion in allowing this amount of testimony to come in in this case. Did the court properly use his prior convictions in the Peaches testimony? Yes. Defendant's 2013 conviction for predatory criminal sexual assault was properly admitted and proper exercise of the court's discretion. Where the defendant chose to testify, he put his credibility at issue. And under Montgomery, this evidence comes in to impeach his credibility. And People v. Atkinson makes it clear, the Supreme Court made it clear, that just because a case is similar to the offense charged, is not a mandate exclusion of that prior offense. And in here, it's important to look at how well was prior conviction used. The prior conviction was not used or even sought to be brought in as propensity evidence. It was sought for the state in its motion pursuant to Montgomery, and the court allowed it in for that very purpose. And the court did not allow in the details of the victim of that case, and merely allowed in the type of offense at the end of the year of the conviction. And it's important to note, too, that the prior conviction was only argued and mentioned once during closing argument by the state, and they informed the jury that this conviction was only to be considered to assess the defendant's credibility. And in no way referenced it to be used for any other purpose. And the jury was instructed that they could only use that prior conviction to assess the defendant's credibility, and they could not use it for that. And the jury is presumed, on appeal, the jury is presumed to have followed the instructions. And to speculate that they may have thought it was for some other victim, or even one of the victims here, that is pure speculation, which is improper at this point. What significance do you draw that the jury asked for it during their deliberations? Well, as this Court knows, juries write jury notes and ask questions all the time. Juries are curious. But that is not evidence that this jury used that evidence improperly, or that they used that conviction as evidence of his guilt for the offense. They were instructed to continue to deliberate with the evidence that they had and with the instructions that they had, and they did so. And we can only presume at this point, and it would be improper to speculate otherwise. So for these reasons, and notes containing the people's brief, if there are no other questions, the people respectfully request that this Court affirm the defendant's conviction. Thank you, Ms. Pugliese. Thank you. Ms. Starr. Just a few brief comments, Your Honors. Steve mentioned the Donahoe case, and while that Court did allow in prior conduct of similar offenses, the Court did note that that wasn't unlimited, that restraint should be used when adding in other crimes' evidence. I'd also like to point out that during the second sister's testimony, defense counsel objected and at the sidebar said that the evidence was turning into a mini-trial on these other crimes. The prosecutor said propensity evidence was allowed in, and that the judge did not put any limit on the quantity of other crimes' evidence that could be allowed in. And the Court sustained or, I'm sorry, overruled the objection and let the State continue. So that sidebar indicates that the judge actually wasn't aware that there should be a limit on propensity evidence, even if some propensity evidence can come in. The State also, at trial, based on its comments in opening and closing arguments, wanted to establish that Washington committed more than the four acts that were alleged in the indictment. The State kept referring to the other sister's testimony, stated that from 1999 to 2005, Washington was committing these acts against all three sisters, and kept repeating such comments. And that shows that the State was using it for propensity, but to such an extreme amount that Cardamom would help to be improper. If the Court has no further questions, we ask for remand. Thank you. Thank you very much. Ms. Stein, Ms. Pugliese, I want to compliment the two of you on your briefs and on your arguments. This matter is going to be taken under advisement, and this Court stands in recess.